Jeff D. RHODES and Nancy L. Rhodes, Appellees,

v.

CONTINENTAL FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellant.

No. 49980.

Supreme Court of Oklahoma.

Jan. 20, 1981.

Rehearing Denied March 16, 1981.

James J. Harrod, Edmond, Thomas J. Lee, Oklahoma City, for appellees.

Spradling, Stagner, Alpern & Friot by John T. Spradling, Delmer L. Stagner and Stephen P. Friot, Oklahoma City, for appellant.

WILLIAMS, Justice.

This is an appeal by Continental Federal Savings and Loan Association (Continental), defendant below, from a judgment against it and in favor of plaintiffs below, Jeff D. Rhodes and Nancy L. Rhodes, for actual damages in the amount of $2,448.25 and exemplary damages of $40,000. The judgment also ordered Continental to file of record certain releases to be hereinafter mentioned.

The basis of the Rhodeses' claim was that Continental had negligently failed to divulge information it had received from previous dealings with the builders and a previous would-be purchaser of the Edmond suburban home (Lot 9) they, the Rhodeses, financed with Continental and bought from the builder, and that the Rhodeses were damaged as a result of that negligence.

In 1973, Jerry P. Byers, the builder, had obtained a construction loan from Continental for the purpose of building a home on Lot 9, giving a mortgage to secure the payment of same. After the construction was completed the property was placed on the market and on May 4, 1974, Jerry Vinyard and his wife signed a contract for the purchase of the same, making a down payment of $2,700. By its terms, the contract was contingent upon the Vinyards obtaining a loan for the balance of the purchase price by May 31, 1974. The Vinyards then applied to Continental for a loan.

Mr. Mittelstet, the Edmond office manager and a vice president of Continental, was a witness on the Vinyard purported contract to purchase Lot 9 and also handled the Vinyard application to Continental for a loan, later by the Vinyards withdrawn.

The Vinyards were unable to obtain a loan at terms they considered satisfactory,[1] and after the closing date passed, they demanded a return of the $2,700 from Byers, who refused to return it. On June 10, 1974, they filed a suit against Byers, alleging in effect that the contingency upon which the contract depended had failed, and asking for a rescission of the contract and a return of the down payment. Byers, who was in financial difficulties, filed an answer on October 21, 1974, which did not deny that the contingency upon which the contract depended had failed.

None of the pleadings in the action between the Vinyards and Byers alleged that the Vinyards were entitled to a vendee's lien. The only issue presented by the petition and answer was whether the Vinyards' failure to perform was willful and amounted to a forfeiture of the $2,700.

In the action then pending between the Vinyards and Byers for the return of the $2,700 down payment, summary judgment was rendered on January 22, 1975. In that judgment, the trial court found that no loan

had been obtained by the Vinyards by the closing date, that the contingency upon which the contract depended had failed, that plaintiffs were entitled to a return of the $2,700 with interest, costs and attorney fees, and that plaintiffs were entitled to a lien upon Lot 9 "as provided in 42 O.S. Section 30". Judgment was entered in accordance with these findings.

While the action between the Vinyards and Byers was pending, Byers defaulted on the construction loan and Continental, on October 18, 1974, began foreclosure proceedings.

At about this time, Jeff D. Rhodes and his wife, plaintiffs in the action now before this court on appeal, learned the subject property was for sale from a newspaper advertisement of a "distressed builder's sale" and thereafter learned from a real estate saleslady, Mrs. "Mo" Anderson, that she had just acquired a listing on Lot 9 and that Jerry Byers had explained to her that the house was going into foreclosure because of the construction money that he owed Continental. Mrs. Anderson further explained that Continental's interest rate on home loans would go up after November 15th.

After further negotiations during which, according to Rhodes, Mrs. Anderson told him that the property "was actually in foreclosure", Rhodes and his wife decided to buy the property.

On November 7, 1974, they executed a contract with Byers for the purchase of Lot 9, the transaction was closed, with the Rhodeses executing a promissory note and mortgage to Continental, and Byers and his wife executing a deed conveying Lot 9 to Rhodes and his wife. Rhodes and his wife went into possession of the property shortly thereafter.

On April 24, 1975, the Vinyards' judgment not having been paid, they obtained a special execution for the sale of Lot 9. As

---

1. As recited in the judgment purporting to grant the Vinyards a lien for repayment to them of their down payment, their contract to purchase stated the contract was contingent upon their securing a loan for $37,800.00. The

contract was to be closed by May 31, 1974. They did not get a commitment for a 90% loan from Continental for the amount required; it would require a 95% loan and they withdrew their application.

a result of inquiries by the Deputy Sheriff handling the papers, the Rhodeses, and later the other parties to this action, learned about the purported lien held by the Vinyards. There followed a rapid exchange of communications among counsel for the Byerses, the Rhodeses, the Vinyards, Continental, the abstract company which had prepared the abstract upon which the Rhodes-Continental closing had been based and Continental's mortgage insurer, concerning the validity of the lien and who should defend against it. No agreement was reached, and on June 13, 1975, the Rhodeses filed the action which is now before this court on appeal.

Without mentioning the words "fraud" or "misleading conduct" or such, the Rhodeses' cause of action sounds in negligence, appears to be in large part pitched on the alleged facts that through Mr. Mittelstet, Continental knew of the Vinyards' purported contract, the Vinyards' withdrawal of their loan application and the filing and progress of their suit against the Byerses for return of their $2,700 down payment. Mr. Mittelstet's testimony was that he did not know of the Vinyard suit until in December after the Rhodeses got their loan from Continental and bought the property from the Byerses on November 15, 1974. There is evidence to the contrary.

During the pendency of the Rhodeses' action, it developed that Continental had never filed of record a release of its construction mortgage against the Byerses so as to preserve priority over any later liens that might be filed which would be junior and inferior to the construction mortgage, but would take precedence over the later purchase money mortgage.

Also during the pendency of this action, Continental purchased the Vinyard judgment with its purported vendee's lien against Lot 9, and took an assignment thereof.

As noted in the first paragraph of this opinion, the judgment in the case, in addition to awarding actual and punitive damages to plaintiffs, ordered the defendant, Continental, to file certain releases of rec-

ord. They were (1) a release of the construction money mortgage held by Continental, and (2) a release of the purported vendee's lien imposed on Lot 9 by the Vinyard judgment, which was purchased by Continental as previously noted herein during the pendency in the trial court of action from which this appeal arises. The Continental brief on appeal indicated that the construction money mortgage was released of record on July 14, 1976, two weeks after the judgment against Continental was rendered.

The judgment for damages against Continental for its alleged negligence here appealed was based upon a holding of the trial court that Continental had been wantonly and grossly negligent in failing to discharge the duties set out as follows in the trial court's Conclusions of Law:

"1. The defendant Continental Federal Savings and Loan Association had a legal duty at the time of closing its loan to the plaintiffs to disclose any and all facts within the knowledge of such defendant which would in any manner affect the title to the property on which the plaintiffs were about to execute a mortgage to secure their promissory note. Said defendant should have disclosed to the plaintiffs (a) the existence of an unreleased first mortgage from Jerry P. Byers to Continental, (b) the existence of a lawsuit then pending between Jerry Vinyard and Debra Vinyard, plaintiffs, and Jerry Byers, d/b/a Jerry Byers Home Builder, defendant, and (c) the pendency of a foreclosure action instituted by Continental against Jerry P. Byers."

After careful consideration of the voluminous record and briefs before us, we have concluded that the judgment must be reversed in part because (1) by the great weight of the evidence, including the testimony of plaintiff Rhodes himself, he was fully aware of (a) and (c) above (the construction mortgage from Byers to Continental and the fact that foreclosure proceedings thereon were pending, these being the very facts leading to the advertising by Byers of "distressed builder's sale") at the

very time he and his wife purchased Lot 9; (2) the pleadings in the action mentioned in (b) above (the pending action by the Vinyards against Byers), prior to the gratuitous allowance by the trial court in the judgment of a purported lien on Lot 9, did not concern in any way the title to Lot 9,[2,3] and further, Continental's employee allegedly was unaware of the Vinyard action prior to the Rhodeses' purchase of Lot 9, and not knowing of the pendency of such action, if in fact unaware of it, was therefore under no duty to disclose to plaintiffs Rhodeses the pendency of such action.

We find it unnecessary in this appeal to rule upon Continental's claim that the Vinyards' judgment against Byers, purporting to grant a lien, was invalid. Continental took an assignment of the judgment which, as between the parties to it, had become final. Whether Continental may assert whatever rights, if any, it has against those believed responsible for failure of notice of the Vinyard suit to appear in its abstract of title when it made the loan to the Rhodeses and/or against its mortgage insuror is not before this court for its present consideration.

For all of these reasons, that part of the judgment awarding actual and punitive damages to the Rhodeses is reversed. That part of the judgment ordering Continental to file a release of the Vinyard judgment against Byers and Continental, held by Continental by assignment from Vinyard, is affirmed.

AFFIRMED IN PART AND REVERSED IN PART.

IRWIN, C. J., BARNES, V. C. J., and LAVENDER, SIMMS, HARGRAVE and OPALA, JJ., concur.

HODGES and DOOLIN, JJ., dissent.

---

2. The Vinyard judgment, dated January 22, 1975, was not filed of record until March 7, 1975. No mention of a lien had been made in previous filings in that case.

3. "The doctrine of lis pendens [notice] has no application to an action for the recovery of money only." *Flanagan v. Clark*, 156 Okl. 230, 11 P.2d 176, 177 (1932).